Judge Underwood

dissented from the foregoing decision of the court, and delivered the following opinion:

It so happens that I do not possess that clearness of vision which enables me to travel the path pointed out in the opinion just delivered without great apprehension of danger. I perceive obstacles, or fancy I do, which malte it very difficult to get along with safety, in this new application of the right of lieu in favor of the assignor of a bond for real estate, against a remote assignee.
I feel it to be my duty to express my dissent, entertaining at the same time great respect for the opinion of the majority of the Court.
If any lien exists in behalf of Ligón against Alexander, it is not the result of any express contract between them, bul it arises from the facts detailed, by implication of law. According to the doctrines of the English books, when land is sold, and the purchaser becomes bankrupt, part of the purchase money not being paid, there is a natural equity that the land should stand charged with so much of the purchase money as was not paid, without any special agreement for that pin pose; Chapman vs. fanner, I. Ver. 267, In the case referred to, the vendor re *292 tained “some of the deeds in his hands,” and that circumstance was noticed in subsequent cases as of importance, in creating the lien. But in the progress of jurisprudence, such a circumstance was not deemed necessary to sustain the principle. The law became settled in England, that a vendor had a lien upon the land to secure the purchase money, whete other security was not taken; and that this lien attached to the land against the vendee and all persons claiming under him with notice. See Fonblanque’s Equity, 381, and authorities in note l. The sane doctrine has been adopted in this state, and so repeatedly enforced, that it cannot now be disturbed. The question, however, in this case, is not, whether such a lien exists in behalf of the original vendor, who either retains the title, or has parted with it, taking no security for the purchase money; but it is, whether the assignor of a bond for land is entitled to it.
There is, to my mind, a wide difference between the condition oí the original vendor andan assignor of the vendor’s bond. This difference will manliest itself by considering the foundation upon which the lien rests in behalf of the original vendor. He is bound to make good the title. And so far as my knowledge extends, the doctrine of lien in his he-huh, grew out of cases where he W'as hound to warranty. li the vendor agrees by executory contract, to convey without warranty, I know of no adjudged case where the chancellor has interposed to enforce a lien m his behalf. Il the chancellor should be applied to lor such a purpose, I should think it sliange, were he not to require the vendor to show that, lie had a title, ii it were questioned, before a sale was Decreed. It would be a pi oceeding in rem,- and the dot trine is, in suih cases, that the chancellor will see that thei.e is something to sell before sending out his commissioner.
Where the vendor has a title and warrants it, or even tonveys without warranty, if he loses the purchase money, lie is thereby impoverished. If he conveys with warranty, having no title, and loses the purchase money, and thereafter the land falls into the hands of a remote vendee, without notice *293 of the lien, and the land should be recovered from bbn, then as tne warranty runs with the laud, tins ,. emote venuee might recover lor the eviction against the original vendor, and mus lie would tie ed to a double loss. Now it does seem to me, Unit those hardships, and liabilities on the part of the vendor, constitute tne only sensible foundation on wnich to place the lien m any case. If it can be shown then, that tne assignor of a bond ioi land, is exempt from a great pact ol tiie burden imposed on the vendor and onligor, tiie reason tor establishing a hen in his favor, wilt certainly not be so stiong, ii is in favor of the vendor. It is indisputable, from tne repeated decisions of this couit, tnat tne assign- or, by tiie mere a< t of assignment, incurs no responsibility whatever, beyond a guarantee of tiie genuineness of trie obligation assigned, and an implied promise to be answerable for the consideration received, upon condition, ttiai the assignee uses due diligence, and lads to recover from the obligor. The assignor is not bound to warrant the title to tne thing which the assigned obligation calls for, without an express stipulation, li it be land and it he taken by a paramount, claim, the assignor escapes; although lie may iiave ¡eteived lrom his assignee douoie the sum he gave, provided there is no fraud; Bedal vs. Suth, III. Mon. 290, and Stafford vs. Steeles executors m Jra. If the land cannot be recoveied at all oy the assiguee from the obligor, and da . a es can be had tor tiie failure to convey, the as.ignor is nwispousible; See Moredock &c. vs. Rawlings, III. Monroe, 13, in addition to the above cases, livery sate of a chattel does, per se, contain a warranty ol title, livery sale of land Wheie the vendor agiees to make a title, or which I take to be the same thing, to convey by a “good and sufficient deed,’' without saying what kind oí a tide it shall be, lequiies a lee sin.pie title and a deed with war anty. I hese positions have never been disputed, so lar as I know, since the cases of Chinn vs. Woods, Hardin, 532; Fleming vs. Harrison’s devisees, II Bibb, 171, and Calmes vs. Buck, IV. Bibb, 453. Now when Ligon is not bound for the Utie in any manner whatever, wnen there never was the *294 shadow of a responsibility imposed upon him in relation to the title, and when it is certain that he never had any title to sell, I cannot perceive the ground upon which he can be considered as the vendor of land, and as such entitled to a hen.
Lissem.
Dissont'
Bonds for the conveyance of land, like bonds for money, are made assignable by statute. They are technically speeking, no more than dioses in action. The legislature gave to them an assignable quality, because it was deemed compatible with the interests and convenience of the. people. If the legislature had designed to impart to tiiese assignable dioses in action the character of mercantile paper, subject to the rules of the lex mercatoria, it would be difficult, if not impossible, to prove that the assignment could be clogged with any implied lien in favor of the assignor in any case. But there is no ground for supposing that the legislature intended to put title bonds upon a footing with bills of exchange. It. is a point settled by adjudged cases. Nevertheless, the legislature did intend to give to the assignee a perfect right to the chose in action, and they expressly declared that the assignee might, sue upon it, in the same manner that the original obligee might or could; saving, however, to the obligor the same defences, both in law and equity, which he might have asserted against the obligee. The statute treats the contract of assignment as the transfer of a chose in action, and not the sale of the thing which the bond may call for. It subjects the assignee to but one condition, and that is, the defences which the obligor may assert against him, growing out of transactions with the obligee or assignor. The maxim is, that the expression of one thing is the exclusion of others. And yet the opinion of my brethren makes the assignee take the bond subject to another burden, to-wit: an implied lien in favor of a remote assign- or, between whom and the holder (as in this case) there is no privity whatever. It is hardly necessa-. ry to say that an assignee cannot persue a remote assignor, hut must go on his immediate assignor in case the principal fails. This doctrine is too well settled to need the citation of authority in support of it. And yet the remote assignor, by the help of *295 the lien created in his behalf, goes on the remote assignee, and compels him to pay the debt of the insolvent intermediate. It does seem to me that there is no reciprocity or justice in this.
Dissexxt.
I maintain that the assignment of a title bond, under the statute, is not a sale of land. I think the foregoing considerations are entitled to some weight in proving it, but there are others equally satisfactory to my mind.
If the doctrine contended for in the opinion can be supported at all, I think, it will be conceded, that it can only be sustained by the aid of the maxim, that tiie chancellor will consider all things done which ought to have been done. Under this maxim the chancellor may say, that the obligor ought to have conveyed to the obligee, and he to his assignee, and so on. Now it seems to me that the chancellor cannot, and ought not to say any such thing, and that he is forbidden by the statute. The effect of the statute and of every adjudication, whpre the obligor has notice of the assignment, is, that he must perform to the assignee and to him only. If the covenant, by its terms, is not due when the assignment takes place, it is to be performed with the assignee. If it has been broken when the assignment takes place, the damages are to be paid to the assignee. In the first case, it would be against common sense, for the chancellor to say, 1 will consider that as done which ought to have been done, and therefore, I will regard the obligee as having got the title from the obligor, and passed it to the assignor, when in truth, the title was never due to the obligee. In the second case, where the assignee is entitled to damages, and receives the assignment, as he may do, because the covenant has been broken, it would, as it seems to me, be a very novel determination in any chancellor, to consider a thing as done, which the covenant shewed had not been done, and which, if performed to the assignor, according to this strange supposition, would have made him guilty of a fraud in assigning an obligation which he must know had been satisfied. I therefore look upon the maxim under which the lien in this case must be sustained, if at all, as altogether inapplicable.
Dissent.
But again, before the chancellor can convert the assignment of a title bond into a sale of land, and attach a lien to it, he must presume that the obligor has a good and valid title to the land. If a vendor gives a bond to convey land to which he has no title, and it passes by assignment through a hundred hands, it is impossible that any one of them can have a lien on it, growing out of the transaction. Contraits between others cannot create a lien on the land of A, when he is no party. Now it may be the very want of title in the obligor, which induced him to violate his bond, and which entitles the assignee to damages. Is it not strange, in such a case, that the chancellor should presume he had title, in order to create a lien. I had supposed heretofore, that the rational presumption was, that when a man failed to comply with his contract, law and charity both required us to presume that he had not, on the day it was due, the thing it called for. If he had it, he sboidd have delivered it or conveyed it, such being his duty. However this may be, I certainly perceive no reason to presume, when a man fails to discharge his engagements, that he was very able to do it, but would not. Before his failure the presumption of law is, that he will comply, and that lie is able. I do not see how his failure lets the presumption of his ability stand, and changes the presumption in regard to his will.
I consider it the duty of the vendor who asserts a lien on land, to show the existence of such a title as the lien contended for, may connect itself with. How is the assignor of a title bond to do this? He can only do it by setting forth a title in the obligor. And how is lie to reach this title? He can only do it bv inducing the chancellor to compel the assignee to accept it. Where the obligor has title and has violated his bond, the assignee mav sue for a specific execution, or for damages, at his election. Which he will do is matter of uncertainty. If he sues for damages will the remote assignor have a lien on them, to secure his demand? If he would, then I see no reason why he would not have the same lien on a judgment for debt or damages upon anv discription of contract, to secure claims against his im-. *297 Stediafe assignee. Surely where the holder of the bond or last assignee converts his chose in action in* , . , .i-i i i . . to a judgment tor damages, there can be. no implied lien upon it in favor of any assignor. This the lien contended for, dependent nipón a condition which may or may not happen. If the holder of the bond goes for the land, then there is a lien; if he goes for damages, then there is none! Thus this implied lien remains in dubio, dependent upon the election of the last assignee, instead of fixed legal principles. 1 his difficulty, the opinion waives, and in substance says, whether the recovery of damages would or would not destroy the lien, need not be determined; for conceding it, that should not prevent the enforcement of the lien previous to such recovery. This is a distinct avowal, as I understand it, that a remote assignor can compel the assignee to accept the land, and thereby control him in the exercise of his election in suing upon the bond. This, to my mind, is a direct violation of the statute, which gives to the last assignee, the same right of suing, which the obligee would have had by retaining the bond; and that can be nothing less than an uncontrolable right to sue for a specific execution or for damages at his election. See the consequences of compelling the last assignee to take the land. The vendor sells at a high price, and then trifles with his contract until the land falls in price one half, if he had conveyed, as he ought to have done, the assignee might have made a profit even upon the vendor’s price. Compelling the vendor to return the purchase money with interest may do justice; but if you compel the assignee to take the land, now worth only half, and then sacrifice it to discharge the implied lien, you do effectually,, by such an interference, deprive the assignee of one half of the Value of his demand against the obligor upon the bond. I never can consent to such a doctrine.
Dissent,
But again, we have discovered the maxim that the chancellor will consider as done that which ought to have been done, as applicable and efficacious in one class of cases bearing analogy to this. We have decided that we will not, in order to secure dower to the tvives of the intermediate agsign *298 ©rs, take it, that the title had successively passed through their hands to the last assignee, bo far as the doaer right of the assignor’s wife is concerned, • we look upon the assignment as the evidence of the transfer of a chose in action merely; but. now when the assignor wants to make the remote assignee surety for an insolvent debtor, by implication, we see the subject through different optics, and regard the title as having regularly passed through the various assignors down to the last assignee, ami thereby fix a lien upon the landl
Dissent.
How is this new application of the doctrine of liens to work in practice? The obligor has received his purchase money; the last assignee has paid all he agreed to give for the bond. The effect of the statute is to put them in the attitude of obligor aiid obligee, as though they had been the original contracting parties. But under the opinion, the assignors, who have not been paid the consideration promised them for their respective assignments, have a right to break the relation subsisting under the statute between the obligor and last assignee, and have all their liens settled. There may be ten or twenty assignors. How long will it take to end the war of liens which they may carry on? Suppose the purchase money due to A, the first assignor, is not due for ten years, then his lien cannot be enforced until the end of that period. But suppose the money due B, a subsequent assignor, is due immediately, can he charge the land in the hands of the last assignee forthwith, or must he wait patiently until it shall be seen whether A’s lien will be enforced at the end of the ten years? Being opposed to the whole doctrine, I shall not undertake to answer this question, and I shall refrain from putting more.
The case of Stewart vs. Hutton, Ilf. J. J. Mar. 178, aside from the obiter dicta it contains, does not touch the present.. An entry and survey constitute an inchoate legal estate. It is subject to execution, and I still think the vendor of such an estate is as much entitled to a lien as if he had obtained the patent. As to the case of Ried vs. Wiseman’s heirs, it is still within the power of the court, and I think the opinion should be withdrawn, I confess that in *299 these cases my mind was not struck with the importance of the doctrine which they are quoted to support. In assenting to them, I did not perceive the trammels to the business transactions of men, in regard to the assignment of tille bonds, nor the great danger of permitting the assertion of implied liens against the last assignee, and fixing him with notice by the testimony of witnesses liable to forget or misrepresent, which I now do. ' Nor did I then discriminate between the sale of land, and the transfer of a chose in action. 1 consider it better to make this acknowledgement than to persevere in error.
Believing that the doctrine óf lien is misapplied, • and that tiie error of the court consists in regarding the assignment of a chose in action as a sale of land, and that it will operate injuriously to society, I think the circuit court properly sustained the demurrer.